**STATE of Indiana, Appellant (Defendant Below),**

**v.**

**Jerold Leon MAGNUSON, Appellee (Plaintiff and Counter-Defendant Below).**

**and**

**Doris Orme (Defendant and Counter-Plaintiff Below),**

**Board of Commissioners of Floyd County (Defendant Below), Stephen M. Gammons (Plaintiff Below),**

**Justin Andrew Magnuson, (Plaintiff Below).**

**No. 1–1084A263.**

Court of Appeals of Indiana, First District.

Feb. 12, 1986.

David P. Allen, Allen & Newkirk, Farmers-Citizens State Bank, Salem, for appellee.

ROBERTSON, Presiding Judge.

Defendant-appellant State of Indiana (State) appeals from a judgment entered on a jury verdict in favor of Jerold Magnuson (Magnuson) in the amount of $209,000.

We affirm.

The facts most favorable to the judgment are summarized as follows. On December 5, 1979, Magnuson was driving in a southerly direction on Highway 111 in Floyd County, Indiana. Magnuson's son and Stephen Gammons (Gammons) were passengers in the car. As Magnuson approached the entrance to Grant Line School, Doloris Orme (Orme) pulled out of the school parking lot into Magnuson's lane of traffic. Magnuson swerved into the left-hand lane in an attempt to avoid hitting the Orme vehicle. Magnuson pulled up next to Orme, who crossed the center line to turn left onto St. Joseph Road. Orme collided with Magnuson, and the Magnuson vehicle then struck a culvert headwall located on the northeast corner of the intersection of Highway 111 and St. Joseph Road.

Highway 111 (also known as Grant Line Road) is part of the Indiana State Highway System. It is a two-lane highway running north and south. It intersects at one point with St. Joseph Road, which lies approximately 90 feet south of the driveway of Grant Line School. The State has repaved and widened Highway 111 at various intervals. On the date of the accident, the intersection featured these characteristics: Highway 111 at St. Joseph Road was 26 feet wide, widened from 20 feet in 1978. A culvert lies just beneath the pavement at the northeast corner of the intersection. The culvert is protected on one side by a guardrail. The concrete headwall that Magnuson struck also protects the culvert. This culvert headwall extends 1.3 feet into the travelled portion of Highway 111, and is not itself surrounded by any guardrail.

Linley E. Pearson, Atty. Gen., Thomas Ralph Hamill, G. Richard Potter, Robert S. Spear, Deputy Attys. Gen., Indianapolis, for appellant.

W. Brent Gill, Sharon L. Hulbert, Law Offices of Roger L. Pardieck, Seymour,

Southbound motorists are alerted to the existence of the headwall at that intersection by a "Narrow Bridge" sign erected 400 feet north of the culvert headwall. Two signs indicating a no-passing zone were posted at the intersection, one on each side of Highway 111. The posted speed limit for southbound motorists passing Grant Line School is 40 miles per hour, 25 miles per hour "when children present".

Magnuson brought suit against the State, alleging negligence in the design, construction and maintenance of Highway 111. Specifically, Magnuson alleges that the State did not discharge its duty of reasonable care by posting a warning sign; rather, its duty to provide reasonably safe highways required it to remove the hazard from the roadway or place a guardrail in front of it. A jury trial commenced on March 13, 1984. The jury returned a verdict against the State and in favor of Magnuson. Judgment was entered on the verdict on March 22, 1984.

On appeal, the State presents four issues for consideration:

1) Whether the State was immune from liability as a matter of law, by operation of IND. CODE § 34-4-16.5-3;

2) Whether the State discharged its duty of reasonable care under the circumstances as a matter of law;

3) Whether the trial court erred by refusing to read the State's tendered Instruction Number 7 and by reading Magnuson's tendered Instructions Number 1, 2, 3, 5, 7 and 8;

4) Whether Magnuson was contributorily negligent as a matter of law.

For its first issue [1] the State argues that there is no liability on their part by reason of IND.CODE 34-4-16.5-3(6) and (9). That statute in appropriate part reads:

34-4-16.5-3. Immunity from liability. A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\*     \*     \*     \*     \*     \*

(6) The performance of a discretionary function;

\*     \*     \*     \*     \*     \*

(9) The act or omission of someone other than the governmental entity employee;

\*     \*     \*     \*     \*     \*

Insofar as I.C. 34-4-16.5-3(6) is concerned, the State's position is the decision to replace the wall, whether to resurface the road, the erection of signs and what signs to erect, and, whether or not to install guard rails are discretionary functions involving the use of judgment. The exercise of judgment by highway employees is discretionary, the argument continues, similar to judgment exercised by police in the investigation of a rape, *Crouch v. Hall*, (1980) Ind.App., 406 N.E.2d 303; by firemen in choosing to fight a fire, *City of Hammond v. Cataldi*, (1983) Ind.App., 449 N.E.2d 1184; or, by doctors in giving a weekend pass to a mental patient, *State Dept. of Mental Health v. Allen*, (1981) Ind.App., 427 N.E.2d 2.

Magnuson points out that the maintenance and repair of highways does not qualify as a discretionary function. *Elliott v. State*, (1976) 168 Ind.App. 210, 342 N.E.2d 674, *Indiana State Highway Commission v. Clark*, (1978) 175 Ind.App. 358, 371 N.E.2d 1323, *State v. Thompson*, (1979) 179 Ind.App. 227, 385 N.E.2d 198.

The long standing definition of discretionary and ministerial functions is found in *Adams v. Schneider*, (1919) 71 Ind.App. 249, 124 N.E. 718:

A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and in the absence of corrupt motives in the exercise of such discretion he is not liable. His duties, however, in the performance of the act, after he has once determined that it shall be done, are ministerial, and for negligence in such per-

---

**1.** Procedurally, the State alleges error in that the trial court denied its T.R. 50 motions at the close of Magnuson's case in chief and at the close of all the evidence.

formance, which results in injury, he may be liable in damages.

124 N.E. at 720.

■ We believe that the rationale of *Mills v. American Playground Device Co.,* (1980) Ind.App., 405 N.E.2d 621, which relies upon the *Adams, supra,* definitions is controlling in this appeal. In *Mills, supra,* it was held, in substance, that the decision to build a playground was discretionary and the installation and maintenance of the playground equipment was ministerial. In a like manner and under the facts of this case, we are of the opinion that the decision to widen the highway in question was discretionary and the installation of signs or devices to warn of the protrusion of the culvert into the travel lane was a ministerial act.

Insofar as the State's argument relating to I.C. 34–4–16.5–3(9) is concerned, we perceive that it is couched in terms equating to an intervening cause and has the effect of asking us to reweigh the evidence pertaining to the role played by Orme in the events leading up to Magnuson's injury. We will not reweigh the evidence. *Litzelswope v. Mitchell,* (1983) Ind.App., 451 N.E.2d 366.

The State also asserts that it owed no legal duty of care, or alternatively, that it discharged any legal duty to Magnuson. Therefore, the State argues, the trial court's denial of the State's Motion For Judgment on the Evidence was error.

■ It is well-settled that the State owes a general duty to exercise reasonable care in designing, constructing and maintaining its highways for the safety of public users. *State v. Thompson, supra; State v. Clark, supra, Elliott v. State, supra; Board of Commissioners of Delaware County v. Briggs,* (1975) 167 Ind.App. 96, 337 N.E.2d 852. The State will be held to that standard of care which would be exercised by an ordinary prudent person under the circumstances. *Elliott, supra.*

In passing on a Motion for Judgment on the Evidence, the trial court must consider whether there is a total absence of evidence or reasonable inference on at least one essential element of a plaintiff's case. *Mamula v. Ford,* (1971) 150 Ind.App. 179, 275 N.E.2d 849; Ind. Rules of Procedure, Trial Rule 50(A). The motion must be denied where there is any evidence or legitimate inferences therefrom tending to support at least one of the allegations, and where the evidence is such that the minds of reasonable men might differ, a judgment on the evidence is improper and the resolution of conflicting evidence is for the jury. *McClure v. Austin,* (1972) 152 Ind.App. 398, 283 N.E.2d 783; *Poxon v. General Motors Acceptance Corp.,* (1980) Ind.App., 407 N.E.2d 1181; *Mamula, supra.*

The State's argument that its duty was discharged when it warned motorists of the hazard by posting a "Narrow Bridge" sign is merely a suggestion that this court assess the weight of evidence or credibility of witnesses. Our standard of review prevents us from so doing. *First National Bank of New Castle v. Acra,* (1984) Ind. App., 462 N.E.2d 1345.

■ It is apparent from our review of the evidence presented by Magnuson that a jury could have found some evidence, albeit conflicting, from which it could reasonably infer that the State was negligent in spite of the presence of a warning sign. Therefore, we find no error in the trial court's denial of the State's Motion for Judgment on the Evidence.

The State's next issue contends that the trial court erred by refusing to read tendered Instruction Number 7. To determine whether there was error in refusing the instruction, the court on appeal must consider whether the instruction correctly states the law, whether the substance of the tendered instruction is covered by other instructions, and whether the evidence supports the instruction. *Trinity Lutheran Church, Inc. of Evansville v. Miller,* (1983) Ind.App., 451 N.E.2d 1099, 1103. Tendered Instruction Number 7 provided:

I instruct you that the State's duty of reasonable care is discharged either by correcting te [sic] alleged condition or defect in the highway, or by warning the

highway user of the existence of the alleged condition or defect in the highway. The State has the option to elect either course of action.

Therefore In [sic] instruct you that if you find from a preponderance of the evidence that the State exercised reasonable care to warn users of the highway of the existence of the headwall in question, then you may find that the State's duty of reasonable care has been discharged and, in that event, your verdict should be for the State of Indiana.

■ The tendered instruction urged the jury to return a verdict for the State if the jury found that the State had erected warning signs. Such a recommendation constituted an incorrect statement of the law. Negligence may be found in the State's failure to use warning signs. *State v. Edgman*, (1983) Ind.App., 447 N.E.2d 1091; *Board of Commissioners of Delaware County v. Briggs, supra.* However, the erection of warning signs does not preclude a finding of negligence. The State has a general duty to exercise reasonable care in designing, constructing and maintaining its highways for the safety of public users. *State v. Edgman, supra; State v. Thompson, supra; State v. Clark, supra; Elliott v. State, supra; Board of Commissioners of Delaware County v. Briggs, supra.* The standard of care is that which would be exercised by an ordinarily prudent person under the circumstances. *Elliott v. State, supra* 168 Ind.App. at 213, 342 N.E.2d at 676. The jury must determine whether the use of warning signs constituted such reasonable care as would be exercised by an ordinarily prudent person under the circumstances. Tendered Instruction Number 7 provided that the duty of reasonable care was discharged by the erection of warning signs, and to that extent, it invaded the jury's province. The instruction was properly refused.

The State argues that the trial court erred by reading Magnuson's tendered Instructions Number 1, 2, 3, 5, 7 and 8. Instruction Number 1 presented Magnuson's theory of the case:

Plaintiffs have the burden of proving the following propositions: That the State of Indiana was negligent in one or more of the following particulars:

(a) Failing to design, construct and/or maintain Highway 111 in the area of the culvert headwall in question in a safe manner.

(b) Failing to remove the culvert headwall.

(c) Failing to install guardrails or other barriers around or in place of the culvert headwall.

(d) Creating a hazardous condition by repaving and widening Highway 111 so as to allow the corner of the culvert headwall to extend out into the paved and/or traveled portion of the roadway.

(e) Failing to provide sufficient clearance from the shoulder of Highway 111 to the culvert headwall.

(f) Failing to provide sufficient warnings of the culvert headwall's location in relation to the paved and/or traveled portion of the roadway.

(g) Failing to establish proper administration procedures as required by law to discover and analyze accident reports to enable them to discover and correct this unsafe and dangerous area within reasonable time.

(h) Failing to provide no-passing signs and/or proper no-passing pavement markings on Highway 111 in the area of Grant Line Elementary School.

If you find from a consideration of all the evidence:

FIRST:

That the plaintiffs have proven one or more of the above propositions; and

SECOND:

That the plaintiffs were injured; and

THIRD:

That the proven proposition or propositions considered together were a negligent act or omission of the defendant which was a proximate cause of the injury to the plaintiff; then your verdict should be for the plaintiffs. However, if you find from a consideration of all the evidence that either

FIRST:

That plaintiffs have failed to prove any of the propositions, or

SECOND:

That the proven proposition or propositions considered together do not constitute a negligent act or omission of the defendant or that such were not a proximate cause of the injuries of plaintiff, or if you find that the plaintiff, Gerald [sic] Leon Magnuson, individually, was guilty of contributory negligence, your verdict should be for the defendant.

According to the State, the theories of liability addressed in paragraphs (b), (d), (e), (f), (g) and (h) were unsupported by the evidence. A review of the record discloses evidence supporting each theory. Paragraph (b) was substantiated by expert testimony indicating that the culvert headwall should have been removed. In support of paragraph (d), there was evidence that when the highway was repaved, a hazardous condition resulted because the culvert headwall extended 1.3 feet into the roadway. Experts testified that there was insufficient clearance from the shoulder of the highway to the culvert headwall, thereby lending support to the theory of recovery raised by paragraph (e). Paragraph (f) was based upon testimony suggesting that the "Narrow Bridge" warning sign was an inadequate measure to correct the hazard created by the culvert headwall. Regarding paragraph (g), there was evidence that the State reviewed accident histories only if a specific complaint was brought and that the State did not maintain a file of accident reports. Paragraph (h) was founded on expert opinion that there should have been "No passing" signs and pavement markings in the area of the school. Thus the evidence supported Instruction Number 1.

The State challenges Instruction Number 1 on two additional grounds: (1) paragraphs (b) and (f) are inconsistent, confusing and misleading; and (2) paragraph (h) is directly contrary to IND. CODE § 9–4–1–69 (1982) (prohibiting driving on the left side of the road under certain circumstances). These challenges are waived, because

the State offers no cogent argument to bolster its assertions. *See* Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *See also City of Hammond v. Beiriger,* (1975) 164 Ind.App. 275, 328 N.E.2d 466 (assertions of error bereft of any supporting argumentation will not be reviewed by court of appeals).

Magnuson's tendered Instruction Number 2 provided:

The State of Indiana has a duty to exercise reasonable care in the design, construction, maintenance and repair of its highways for the safety of public users. In designing, construction, maintaining and repairing its highways, the State of Indiana must exercise that care which would be exercised by an ordinary prudent person under the circumstances.

The State maintains that the trial court committed reversible error by reading Instruction Number 2, because either the State had governmental immunity or it had discharged its duty of care. These allegations were addressed and dismissed in the discussion of Issues One and Two.

The State criticizes Magnuson's tendered Instruction Number 3 on the ground that it is confusing and misleading. Instruction Number 3 described the State's duty of care:

The State has a duty to protect the users of its highways from dangerous or hazardous conditions on its highways.

The failure to define the term "protect" renders Instruction Number 3 defective, according to the State. It is true that a trial court must define in its instructions the technical or legal phrases relevant to the material issues. *Illinois Central Gulf R.R. v. Parks,* (1979) 181 Ind.App. 148, 154, 390 N.E.2d 1073, 1077. However, the term "protect" is not a technical term that could be misunderstood by the jury. Instruction Number 3 is neither confusing nor misleading.

Complaint is also made of Magnuson's tendered Instruction Number 5:

You are instructed that where a person is confronted with a sudden emergency not of his own making without sufficient

time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent person would exercise when confronted by a like sudden emergency, he is not liable for an injury which resulted from his conduct, even though another course of conduct would have been more judicious or safer and might even have avoided the injury.

In this case, if you find that Jerold L. Magnuson perceived and was faced or confronted with a sudden emergency not of his own making, and that he then pursued a course that an ordinarily prudent person would pursue or follow when confronted by the same emergency, then Jerold L. Magnuson cannot be charged with negligence even though it would later appear that by some other course of action or conduct he might have avoided the accident.

■ The sudden emergency doctrine is an affirmative defense which recognizes that the law does not require the same accuracy of judgment of one who has innocently been deprived of time to deliberate his actions as it requires of one who has the opportunity for deliberation. *Stein v. Yung*, (1985) Ind.App., 475 N.E.2d 52, 54. An instruction on the doctrine is warranted where the evidence supports the following facts:

(1) The appearance of danger or peril was so imminent that the party had no time for deliberation;

(2) The situation relied upon to excuse any failure to exercise legal care was not created by the party's own negligence;

(3) The party's conduct under the circumstances was such as the law requires of an ordinarily prudent man under like or similar circumstances.

*Taylor v. Todd*, (1982) Ind.App., 439 N.E.2d 190, 193.

■ The State avers that the doctrine of sudden emergency was not applicable to the instant case, because Magnuson had

time for deliberation. Although Magnuson indicated that he was not confronted with a panic situation, there was evidence from which the trier of fact could find that he had no time for deliberation. Magnuson was driving at 36 to 40 miles per hour when Orme pulled out in front of him. Magnuson did not know whether he could stop in time. Gammons, a passenger in Magnuson's car, agreed that Magnuson did not have time to stop the car. Both Magnuson and Gammons felt threatened, and Magnuson perceived the situation as alarming. The appearance of danger was so imminent that Magnuson had no time to deliberate his movement into the left-hand lane to avoid hitting Orme.

■ The State also asserts that the doctrine of sudden emergency was inapplicable because Magnuson was speeding as a matter of law, thereby creating the emergency situation. Magnuson was travelling at 36 to 40 miles per hour along a road posted with a 40 miles per hour speed limit sign. The school zone was posted for "25 miles per hour when children present." Expert testimony established that the reduced speed limit applied when children were coming to school in the morning and leaving school in the afternoon. At the time of the accident, school had reconvened after lunch and there were no children arriving at or leaving the premises. Thus Magnuson was driving at a reasonable rate of speed under the circumstances. Magnuson did not place himself in a situation of peril through his own negligence.

Additional error is alleged regarding Magnuson's tendered Instruction Number 7. The instruction recited the text of IND. CODE § 9–6–3–1 (1982):

There was in force a statute of the State of Indiana which provided:

The Department of Safety shall collect, compile, interpret and publish statistics and information relative to motor-vehicle accidents on the public highways of this state, and where it seems that there is undue hazard causing accidents it shall be the duty of the head of such department to call the same to the attention of

the proper local or state officials and enlist their cooperation in overcoming or removing said hazard so far as is practical.

If you find from a preponderance of the evidence that the Defendant failed to comply with this statute on the occasion in question, such conduct could constitute evidence of negligence on the part of the Defendant.

■ The State reasons that Instruction Number 7 was without evidentiary support, because there was no testimony from an employee of the Department of Safety. The pertinent testimony was supplied by Dennis Mills, an employee of the Seymour District of the Indiana State Highway Commission. Mills' testimony indicated that traffic hazards were not brought to the attention of the highway commission by the Department of Safety. Instead, the highway commission relied upon specific complaints lodged by individuals, local police agencies, local traffic commissions or the state police. Given this evidence that the State had failed to establish administrative procedures to deal with accident statistics, the trial court properly gave Instruction Number 7.

As an alternative argument, the State proposes that Instruction Number 7 references statutes which were impliedly repealed. The instruction was based upon IND. CODE §§ 9-6-2-2 and 9-6-3-1; statutes creating a Department of Safety. The State claims that those statutes were impliedly repealed by IND. CODE § 9-4-1-52 (1982):

The [state police] department shall tabulate and may analyze all accident reports and shall publish annually or at more frequent intervals statistical information based thereon as to the number and circumstances of traffic accidents.

The repeal of statutes by implication is not a favored result under Indiana law. *Schrenker v. Clifford*, (1979) 270 Ind. 525, 528, 387 N.E.2d 59, 60. A statute will be repealed by implication only where a latter statute is so repugnant to and inconsistent with an earlier statute that it must be assumed that the legislature did not intend both statutes to stand. *Id.*

■ There is no repugnance or inconsistency between IND.CODE § 9-6-3-1 and IND.CODE § 9-4-1-52. Both the Department of Safety and the state police department have been assigned the duty of publishing accident statistics. Yet the purpose of the Department of Safety is not fulfilled by the state police department. The Department of Safety was created to implement programs for the protection of life and property on state highways. IND. CODE § 9-6-2-2. Accordingly, the Department of Safety is responsible for notifying proper officials of traffic hazards and for overseeing the removal of such hazards. IND.CODE § 9-6-3-1. No similar duty has been imposed upon the state police department.

We discern no legislative intent to abrogate IND.CODE § 9-6-3-1 by the enactment of IND.CODE § 9-4-1-52. Because IND.CODE § 9-4-1-52 does not operate to repeal IND.CODE § 9-6-3-1, the State's second challenge to Instruction Number 7 must fail.

The final instruction to which the State objects is Magnuson's tendered Instruction Number 8:

A violation of a safety standard is evidence of negligence as to all persons who are likely to suffer injury as a result of its violation.

Therefore, if you find from a preponderance of the evidence that:

(1) The State of Indiana violated the clearance to obstructions and/or roadside obstacles standards of the American Association of State Highway Transportation Officials by failing to have a guardrail along Highway 111, or by failing to remove, replace or relocate the culvert headwall; and

(2) Jerold L. Magnuson and Justin A. Magnuson were the persons likely to suffer injury as a result of the violation then

you may consider the violation as evidence of negligence on the part of the Defendants. As evidence of negligence, one such violation may be considered by you in determining whether the Defendant exercised that care which would have been exercised by an ordinary prudent person under these circumstances.

The State characterizes Instruction Number 8 as erroneous, because either the State had governmental immunity or it had discharged its duty of care. These contentions were deemed unpersuasive in our discussion of Issues One and Two.

The State also urges that Instruction Number 8 constituted an unfair comment on the evidence. Because the State fails to support its position with cogent argument, the issue is waived. *See* Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); *see also City of Hammond v. Beiriger, supra.*

In the last issue presented for appellate review, the State claims that Magnuson was contributorily negligent as a matter of law.[2] A plaintiff is guilty of contributory negligence as a matter of law when the only reasonable conclusion to be drawn from the evidence is that the plaintiff was contributorily negligent. *Gasich v. Chesapeake & Ohio R.R.,* (1983) Ind.App., 453 N.E.2d 371, 374. Where the facts are such as to be subject to more than one reasonable inference, contributory negligence is a question of fact for the jury. *Jones v. Gleim,* (1984) Ind., 468 N.E.2d 205, 207. In the instant case, the issue of contributory negligence was properly submitted to the jury.

▬ According to the State, the evidence discloses three instances of per se negligent conduct on the part of Magnuson: speeding, failing to maintain a lookout, and passing within 100 feet of an intersection. The first contention that Magnuson was speeding is not the only reasonable conclusion to be drawn from the evidence. Magnuson was travelling at 36 to 40 miles per hour along a road with a speed limit of 40 miles per hour. Gammons, a passenger in Magnuson's car, testified that Magnuson was not speeding. Magnuson drove through the school zone, posted "25 miles per hour when children present", when classes had reconvened after the lunch period. Expert testimony established that the reduced speed limit applied when children were arriving at or leaving the school grounds. The facts did not compel a conclusion that Magnuson was speeding and, therefore, contributorily negligent as a matter of law.

Similarly, the State's second allegation of negligence per se is not the only reasonable inference to be drawn from the facts. Magnuson did not recall seeing Orme before she pulled out in front of him, but many of the events preceding the collision were unclear in Magnuson's memory due to the head injuries he received. Moreover, Gammons testified that he would have done nothing differently from Magnuson. Thus the facts were subject to more than one reasonable inference regarding the failure to maintain a proper lookout.

The State's final attempt to show that Magnuson was contributorily negligent as a matter of law is unavailing. The State stresses that Magnuson was driving left of the center line within 100 feet of an intersection, thereby violating IND.CODE § 9-4-1-69 (1982). Yet the presumption of negligence raised by violation of a safety regulation may be overcome by proof that the violation was justifiable or excusable. *Reuille v. Bowers,* (1980) Ind.App., 409 N.E.2d 1144, 1154.

Where a person has disobeyed a statute he may excuse or justify the violation in a civil action for negligence by sustaining the burden of showing that he did what might reasonably be expected of a per-

2. Indiana's comparative fault statute, IND.CODE §§ 34-4-33-1 to -13 (Supp.1984), effective January 1, 1985, does not apply to this case.

son of ordinary prudence, acting under similar circumstances, who desired to comply with the law.

*Davison v. Williams,* (1968) 251 Ind. 448, 457, 242 N.E.2d 101, 105.

In the instant case, Magnuson attempted to avoid hitting the Orme vehicle by driving in the left-hand lane. Evidence was presented that Magnuson responded to a threatening and dangerous situation with a controlled evasive maneuver that was the safest thing to do under the circumstances.

Whether Magnuson's response to the situation constituted contributory negligence was properly resolved by the jury. *See Reuille v. Bowers, supra.*

Judgment affirmed.

RATLIFF and NEAL, JJ. concur.