

IN THE

# Court of Appeals of Indiana

Charles Brackemyre,

*Appellant-Plaintiff*



FILED

Aug 05 2025, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Department of Transportation
and the State of Indiana,

*Appellees-Defendants*

---

August 5, 2025

Court of Appeals Case No.
24A-CT-3172

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause No.
59C01-1905-CT-176

---

**Opinion by Judge Bradford**

Judges May and Mathias concur.

**Bradford, Judge.**

## Case Summary

[1] Charles Brackemyre filed a complaint for damages against the Indiana Department of Transportation ("INDOT") and the State of Indiana (hereinafter, "Defendants") for injuries he had allegedly incurred on a roadway in Orange County. After the trial court granted the Defendants' motion for summary judgment, Brackemyre moved to correct error, which motion the trial court denied. Brackemyre now contends that the trial court erred in granting the Defendants' summary-judgment motion because there are genuine issues of material fact which preclude summary judgment and because the Defendants are not entitled to immunity as the basis for summary judgment as it relates to his allegations of negligent maintenance of the roadway. We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[2] On September 16, 2017, Brackemyre was traveling westbound on his 2005 Harley-Davidson Electra Glide motorcycle on State Road 56 with a passenger seated behind him. An incident occurred on the roadway, which allegedly caused Brackemyre to lose control of his motorcycle and sustain injuries.

[3]     On May 14, 2019, Brackemyre filed a complaint for damages raising sixteen claims of negligence against the Defendants[1] for injuries he was alleged to have incurred on a roadway in Orange County "as a result of [the Defendants'] negligence." Appellant's App. Vol. II p. 16. Specifically, Brackemyre alleged that, on the date of the incident, "he came upon tar that was very slippery, which had been used by the defendants to repair cracks on the roadway, causing [Brackemyre] to lose control of his motorcycle and suffer serious injuries." Appellant's App. Vol. II p. 16. Among Brackemyre's complaints included that the Defendants had been negligent in the "design, construction, upkeep, repair and maintenance of" the roadway. Appellant's App. Vol. II p. 16.

[4]     In December of 2020, the Defendants deposed Brackemyre. In his deposition, Brackemyre stated that, before the incident, there had been six motorcyclists in front of him, and the weather had been "hot and sunny." Appellant's App. Vol. II p. 59. Brackemyre testified that the group had ridden "staggered, which meant not beside each other[,]" and that the motorcyclist ahead of him had "wanted to ride by the centerline" so Brackemyre had taken the "berm." Appellant's App. Vol. II p. 61.

---

[1] Originally, the Orange County Highway Department was also included as a defendant in Brackemyre's complaint. The trial court dismissed with prejudice Brackemyre's claims against the department on April 7, 2020, per Brackemyre's and the department's stipulation.

[5] Brackemyre testified that he had had "about 50 years" of experience riding a motorcycle at the time of the incident but that he had never traveled on this stretch of road before. Appellant's App. Vol. II p. 60. He testified that as he had come to a curve in the road, he had seen the motorcycle in front of him "slide" and "fish-tail." Appellant's App. Vol. II p. 61. Brackemyre testified, "At that time we realized that out by the berm where I was was tar snakes.[2] So I started at that point trying to figure out what I was going to do." Appellant's App. Vol. II p. 61.

[6] Brackemyre testified, "I let off of the throttle, started applying both brakes and slowing the bike down as much as we can, and […] looking for some place to go if we needed to do so. And I could not correct the bike when we hit the tar snakes enough to stay on the pavement. So, we went off to the grass – or, through the grass to the right." Appellant's App. Vol. II p. 61. Brackemyre also stated, "Tar snakes are oil on the road. It was hot and sunny that day. Those tar snakes, the sun had softened them up, and that basically turns to oil[.]" Appellant's App. Vol. II p. 63. He also testified that he had been traveling between forty-five to fifty miles per hour when he had approached the "tar strips." Appellant's App. Vol. II p. 63.

---

[2] "Tar snake" seems to be a colloquial term describing a type of sealant used to repair cracks in the roadways. Both parties seem to agree that the "tar snakes" are not actually made with "tar." Appellant's Br. p. 12, Appellee's Br. p. 8. *See* Appellee's Br. p. 8 ("INDOT uses asphalt-based hot poured joint sealant to seal cracks in roadways it controls and maintains pursuant to various standards. […] Brackemyre refers to these repairs as 'tar snakes[.]'"); *see also* Appellant's Br. p. 12 ("'tar snake' is a colloquial term describing the oil-based crack sealant used by [the Defendants] at this location[.]").

Brackemyre testified that he had been "trying to get the bike slowed down, and we were not going slow enough yet to stop when he hit the tar snakes. So, I […] purposely, when we hit the tar snakes, tried to avoid wrecking on the asphalt." Appellant's App. Vol. II p. 64. He also testified that he had been in control of the motorcycle when it had left the roadway.

On August 5, 2024, the Defendants moved for summary judgment, alleging that they were entitled to judgment as a matter of law for the following reasons:

1. Under the law enforcement provision of the [Indiana Tort Claims Act ("ITCA")], State Defendants are immune from Plaintiff's claims pursuant to Ind. Code § 34-13-3-3(a)(8).

2. State Defendants are immune from liability under the twenty-year design provision of the ITCA because State Road 56 was not designed or substantially redesigned in the twenty years prior to the incident.

3. State Defendants were not the proximate cause of Plaintiff's injury.

4. Plaintiff's claims against State Defendants are barred by his contributory negligence.

Appellant's App. Vol. II p. 26. In support of the motion for summary judgment, Defendants designated four exhibits, including the affidavits of expert witness Kevin Johnson and INDOT Director of Stakeholder Services Jason Tiller, Brackemyre's deposition transcript, and Brackemyre's complaint for damages.

[9] Kevin Johnson is "accredited by the A.C.T.A.R., the Accreditation Commission for Traffic Accident Reconstruction" and has "served as an Accident Reconstructionist" since 2011. Appellee's App. Vol. II p. 2. Johnson's affidavit included a copy of his report regarding Brackemyre's motorcycle accident, which indicated that, "[a]ccording to the police report," Brackemyre's motorcycle "was traveling westbound on State Road 56 in a left curve [...] when it lost traction on tar strips on the roadway." Appellee's App. Vol. II p. 4. The report further indicated "[t]here is a speed limit sign approximately 0.75 miles east of where this collision occurred indicating the posted speed limit is 50 miles per hour. Approximately ½ mile east of where this collision occurred, there is a yellow warning sign of the upcoming curves with an advisory speed of 30 miles per hour posted." Appellee's App. Vol. II p. 6.

[10] Johnson's report also made mention of the "narrow repairs to the underlying cracks on the roadway[... which] cover a minimal amount of the pavement surface and do not appear to have any areas of significant width." Appellee's App. Vol. II p. 8. Johnson's report read, "There are minimal repairs from the apex of the curve outward to the outer edge[,]" and "[t]raveling over these short segments would not have an influence on the motorcycle dynamics. An object in motion will continue in motion until acted upon by an outside force. There were no outside forces that acted upon the motorcycle to cause loss of control." Appellee's App. Vol. II p. 10. Johnson's report included his opinions that

[1.] Brackemyre['s] motorcycle was traveling well in excess of the posted advisory speed limit.

[2.] The lateral accelerations faced by traveling at a high rate of speed through this curve could result in a loss of control.

[3.] The increased speed required an exponential increase in stopping distance.

[4.] Brackemyre made the decision to exit the roadway as he traveled through the curve.

[5.] There were no apparent defects in the roadway that would have caused the motion he described without his steering input.

[6.] The proximate cause of this crash was Mr. Brackemyre's inability to negotiate a significant curve in the roadway at a high rate of speed in an unfamiliar area.

Appellee's App. Vol. II p. 12.

The affidavit of Jason Tiller included that State Road 56 "has had the same alignment since at least 1920[,]" had not been "designed in the twenty-year period prior to September 16, 2017[,]" and "was not substantially redesigned in the twenty-year period prior to September 16, 2017." Appellee's App. Vol. II pp. 87–88.

On September 4, 2024, Brackemyre filed an objection and response to the Defendants' motion for summary judgment, contending that "[t]here are genuine issues of material fact as breach of duty" and that summary judgment

is "not appropriate in this negligence action." Appellant's App. Vol. II p. 45. Specifically, Brackemyre contended that "[i]ssues of negligence, contributory negligence, causation, and reasonable care are more appropriately left for the determination of a trier of fact." Appellant's App. Vol. II p. 48. Brackemyre also conceded that the State was entitled to immunity, "and thus, partial summary judgment[,]" on any allegation of design defects, but maintained that "there are genuine issues of material fact that preclude summary judgment" on allegations of negligent maintenance. Appellant's App. Vol. II p. 49.

[13] Brackemyre contended in his response that he had

> had no issues negotiating the roadway until his motorcycle encountered the "tar-snake," regardless of his speed or direction of travel. Negligence and proximate cause are a question of fact for a jury in this case. Weather [(*sic*)] the jury believes the State's purported expert or [Brackemyre] is a quintessential question of fact.

Appellant's App. Vol. II p. 52.

[14] In support of his objection and response, Brackemyre designated his own deposition, his complaint, and the State's designated evidence, and moved for the trial court to take judicial notice of certain publications, which he also designated in support. The publications included in Brackemyre's designations were titled as follows: "Indiana bikers voice concerns over 'tar snakes[;]'" "INDOT responds to 'tar snakes' concerns with new training, repairs[;]" and "Free Access: Slippery Serpents Threatening Bikers[.]" Appellant's App. Vol.

II pp. 90–100. All of the designated articles appeared to be either published or updated before Brackemyre's accident.

[15] On September 13, 2024, the Defendants replied to Brackemyre's response, designating, in support of the motion for summary judgment, the Defendants' Responses to Brackemyre's second request for admission. The designated materials indicated that "[t]ar is not used by INDOT in crack sealing operations. Rather, asphalt-based products are used to seal cracks in INDOT controlled and maintained roadways. Specifically, per INDOT Standard Specifications section 906.02, INDOT uses Hot Poured Joint Sealant in accordance with ASTM D6690, Type II." Appellee's App. Vol. II p. 93.

[16] On November 1, 2024, the trial court granted the Defendants' motion for summary judgment. On December 2, 2024, Brackemyre moved to correct error, which motion the trial court denied the next day.

## Discussion and Decision

### I.    Standard of Review

[17] Brackemyre appeals from the trial court's denial of his motion to correct error, which we review for an abuse of discretion. *Kobold v. Kobold*, 121 N.E.3d 564, 570 (Ind. Ct. App. 2019), *trans. denied*. An abuse of discretion occurs where the decision is against the logic and effect of the facts and circumstances before the court or where the court has erred on a matter of law. *Id.*

Brackemyre contends that the trial court erred in granting the Defendants' motion for summary judgment.

> We review a trial court's summary judgment decision de novo, using the same standard as the trial court. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law .... If the movant satisfies that burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth .... We must construe all factual inferences in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party.
>
> The Indiana Supreme Court has explained, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims. As a result, while the non-moving party has the burden on appeal of showing the Court that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant was not improperly denied a trial.

*Force v. New China Hy Buffet LLC*, 217 N.E.3d 1275, 1277–78 (Ind. Ct. App. 2023) (internal quotations and citations omitted).

It is often said that summary judgment is rarely appropriate in negligence actions, because of their fact-sensitive nature and

because they are governed by a standard of the objective reasonable person, which is a standard best applied by a jury. However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim. When a summary judgment movant designates evidence establishing prima facie that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, the responding party may not rest upon the mere allegations of his or her pleadings.

*Hale v. SS Liquors, Inc.*, 956 N.E.2d 1189, 1191–92 (Ind. Ct. App. 2011) (internal quotations and citations omitted).

## II.   Negligence

[20]   Initially, Defendants contend that because Brackemyre's arguments on appeal only relate to his claim for negligent maintenance of the roadway, he has waived any argument that the trial court erred in granting summary judgment as to the remaining claims in his complaint. We agree.[3] *See Akin v. Simons*, 180 N.E.3d 366, 375 (Ind. Ct. App. 2021) (providing that "the law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived").

---

[3] Furthermore, to the extent that Brackemyre contends that the Defendants were "not entitled to immunity in this case[,]" Appellant's Br. p. 14, his argument appears to regard only his negligent maintenance claim. The Defendants do not appear to argue that they are immune from liability under discretionary function immunity under the ITCA on Brackemyre's negligent maintenance claim, and we agree with Brackemyre that the alleged maintenance of the roadway in this case was not entitled to immunity on that basis. *See, e.g., LaPorte Cnty. v. James*, 496 N.E.2d 1325, 1327 (Ind. Ct. App. 1986) ("[T]he decision to construct a county road is a discretionary function for which the governmental entity is immune from liability. However, the installation and continuing maintenance are ministerial functions for which the governmental entity may be held liable for negligence.").

Brackemyre contends that there were genuine issues of material fact that precluded an award of summary judgment. Specifically, he contends that the Defendants did not meet their burden on summary judgment regarding their arguments that they were not the proximate cause of his injuries or that he was contributorily negligent, which would bar his claims. For their part, Defendants contend that they were entitled to summary judgment on Brackemyre's negligent maintenance claim because they "were not the proximate cause of [Brackemyre's] injury and his claim is barred by his contributory negligence." Appellee's Br. p. 11.

## A.     Proximate Cause

"To prevail on a negligence claim a plaintiff must show: (1) a duty owed to the plaintiff by defendant; (2) breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Bell v. Grandville Coop., Inc.*, 950 N.E.2d 747, 749 (Ind. Ct. App. 2011). Proximate cause involves two inquiries: (1) whether the injury would not have occurred but for the defendant's negligence and (2) whether the injury was reasonably foreseeable as the natural and probable consequence of the act or omission. *Singh v. Lyday*, 889 N.E.2d 342, 357 (Ind. Ct. App. 2008) (quotation and citation omitted), *trans. denied*.

Brackemyre contends that the issue of proximate cause is more appropriately left for the determination of a trier of fact. *See Ousley v. Bd. of Comm'rs of Fulton Cnty.*, 734 N.E.2d 290, 293 (Ind. App. 2000) ("Summary judgment is rarely

appropriate in negligence cases because '[i]ssues of negligence, contributory negligence, causation and reasonable care are more appropriately left for the determination by a trier of fact.'") (citation omitted), *trans. denied.* "When only a single conclusion can be drawn from the facts, the question of causation becomes a question of law." *Correll v. Ind. Dept. of Transp.*, 783 N.E.2d 706, 708 (Ind. App. 2002) (brackets omitted), *trans. denied.*

[24] In the Defendants' motion for summary judgement, the Defendants designated evidence showing that Brackemyre had been operating his motorcycle at forty-five to fifty miles per hour, while the advisory speed limit had been thirty miles per hour. The designated evidence also provided that the posted speed limit was fifty miles per hour. The Defendants also designated evidence tending to show that the lateral accelerations that Brackemyre would have experienced traveling at a high rate of speed through the curve could have resulted in a loss of control, his increased speed required an exponential increase in stopping distance, there were no apparent defects in the roadway that would have caused the incident without Brackemyre's steering input, and the proximate cause of the incident was Brackemyre's inability to negotiate the roadway at a high rate of speed. The Defendants contended that they "could not have reasonably foreseen that [Brackemyre] would fail to abide by his duty to exhibit reasonable care while on the roadway." Appellant's App. Vol. II p. 40.

[25] For his part, Brackemyre argued that he had "had no issues negotiating the roadway until his motorcycle encountered the 'tar-snake,' regardless of his speed or direction of travel." Appellant's App. Vol. II p. 52. Brackemyre also

argued that the designated evidence, including the publications which he had requested be judicially noticed, showed that the sealant used in the roadway "is dangerous to the motoring public, especially to motorcycle operators, and the State knew the same." Appellant's App. Vol. II p. 51. The publications provided, generally, that "tar snakes" create traction issues for motorcyclists and that Indiana state officials had been informed of motorcyclists' complaints regarding the matter.

[26] Brackemyre also designated evidence which he claimed established that he had ridden motorcycles for fifty years prior to the incident and that, before the incident, he had seen the motorcycle in front of him "slide" and "fish-tail" due to what he believed to be "tar snakes" on the roadway, prompting Brackemyre to try to "avoid wrecking on the asphalt" by moving his motorcycle off of the roadway. Appellant's App. Vol. II pp. 61, 64. Brackemyre also claims that his designated evidence established that he had been "in control of the motorcycle when it left the roadway." Appellant's App. Vol. II p. 64. Brackemyre's designated evidence also indicated that "[t]ar snakes are oil on the road. It was hot and sunny that day. Those tar snakes, the sun had softened them up, and that basically turns to oil[.]" Appellant's App. Vol. II p. 63.

[27] Again, summary judgment "is rarely appropriate in negligence actions, because of their fact-sensitive nature[.]" *Hale*, 956 N.E.2d at 1191. When considering a motion for summary judgment, we construe "all factual inferences in favor of the non-moving party," and resolve all "doubts as to the existence of a material issue" against the moving party. *Id*. Moreover, we consciously err "on the side

of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014).

[28] We express no opinion as to whether the designated evidence is sufficient to prove that the Defendants proximately caused Brackemyre's injuries, but, given that we must construe all factual inferences in favor of Brackemyre, we conclude that Brackemyre's designated evidence was sufficient to create a genuine issue of material fact on the question of proximate cause.

## B. Contributory Negligence

[29] Brackemyre further contends that the issue of contributory negligence is a question of fact for the jury. The Defendants contend that Brackemyre's negligence claim is barred by his contributory negligence.

> It is well settled that contributory negligence is generally a question of fact for the jury where the facts are such as to be subject to more than one reasonable inference. However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law.

*Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind. 1984).

[30] "[C]ontributory negligence on the part of a plaintiff provides a complete defense to liability for the Defendants and other government actors who fall within the scope of the ITCA." *Ind. State Police v. Est. of Damore*, 194 N.E.3d 1147, 1158 (Ind. Ct. App. 2022), *trans. denied.*

> In other words, under contributory negligence, a plaintiff is wholly barred from recovery when he or she is negligent and this negligence is even slightly the cause of the alleged damages. The existence of contributory negligence is generally an issue of fact for the jury. It may be a question of law appropriate for summary judgment if the facts are undisputed and only a single inference can be drawn therefrom.

*Id.* (internal quotations and citations omitted). A plaintiff is contributorily negligent "when his conduct falls below the standard to which he should conform for his own protection and safety." *Murray v. Indpls. Pub. Schs.*, 128 N.E.3d 450, 453 (Ind. 2019) (internal quotation and citation omitted).

[31] The Defendants contend that Brackemyre's speed of forty-five to fifty miles per hour, compared to the advisory speed limit of thirty miles per hour, rendered his actions contributorily negligent. The Defendants attempt to distinguish *State v. Magnuson*, 488 N.E.2d 743 (Ind. Ct. App. 1986), *trans. denied*, a case on which Brackemyre relies. In that case, after the jury had returned a verdict in favor of Magnuson after he had struck a headwall with his vehicle on a state highway, the State presented on appeal, among other issues, whether Magnuson had been contributorily negligent as a matter of law. *Id.* The stretch of road in question was a school zone with a posted speed limit of forty miles per hour when no children were present. *Id.* Because no children had been present when Magnuson had driven through the school zone, we concluded that Magnuson's thirty-six to forty miles per hour speed had not compelled the conclusion that he had been contributorily negligent. *Id.*

[32] In this case, it appears undisputed that Brackemyre had been traveling at forty-five to fifty miles per hour before the incident occurred. The Defendants designated evidence indicating that there had been a posted fifty-mile-per-hour speed limit approximately 0.75 miles east of the incident and a warning sign of the upcoming curve with an advisory speed of thirty miles per hour, approximately one-half mile east of the incident. Brackemyre's designated evidence, again, indicated that after he had seen the motorcycle in front of him struggle due to what he believed to be "tar snakes" on the roadway, he had attempted to "avoid wrecking on the asphalt" by steering his motorcycle off of the roadway. Appellant's App. Vol. II pp. 61, 64. Brackemyre's designated evidence claimed that Brackemyre had been "in control of the motorcycle when it left the roadway[,]" and that he had been "getting slowed down" and had "let off the throttle and started applying both brakes" approximately fifty to sixty yards before he had reached the "tar strips." Appellant's App. Vol. II pp. 64, 66. Based on the foregoing, we cannot say that Brackemyre's speed, apparently above the advisory limit but within the posted speed limit of fifty miles per hour, was negligent as a matter of law. Whether Brackemyre's actions had "contributed to his injuries" because he had not reduced his speed to the advisory speed limit appears to be a question to be resolved by the trier of fact, as it was in *Magnuson*.

[33] Construing all factual inferences in favor of Brackemyre, we conclude that Brackemyre's designated evidence was sufficient to create a genuine issue of

material fact on the question of whether he had been contributorily negligent when the incident occurred. *See Hale*, 956 N.E.2d at 1191.

[34] We affirm the trial court's granting of summary judgment in favor of the Defendants as it relates to all of Brackemyre's claims except for negligent maintenance of the roadway. On that matter, we reverse the trial court's decision and remand for proceedings consistent with this opinion.

[35] We affirm in part, reverse in part, and remand with instructions.

May, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

Michael W. Phelps
Hankey Marks & Crider
Indianapolis, Indiana


ATTORNEYS FOR APPELLEES

Theodore E. Rokita
Indiana Attorney General

John R. Oosterhoff
Deputy Attorney General
Indianapolis, Indiana